Carsten A. Peterson, ISB No. 6373
Jessica E. Pollack, ISB No. 8700
HAWLEY TROXELL ENNIS & HAWLEY LLP
877 Main Street, Suite 1000
P.O. Box 1617
Boise, ID 83701-1617
Telephone: 208.344.6000
Facsimile: 208-954-5207
Email: cpeterson@hawleytroxell.com
       jpollack@hawleytroxell.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ACUITY, a Mutual Insurance Company, a Wisconsin corporation,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>THE MANAGEMENT COMPANY, LLC and DAWN E. EDMUNDS,<br><br>　　　　　Defendants. | Case No. _____<br><br>COMPLAINT |

COMES NOW ACUITY, A Mutual Insurance Company ("ACUITY"), by and through its counsel of record, and complains and alleges as follows:

**I.
PARTIES, JURISDICTION, AND VENUE**

1.　ACUITY is a Wisconsin corporation with its principal place of business in the state of Wisconsin. ACUITY is duly authorized by the Idaho Department of Insurance to conduct business in the state of Idaho.

COMPLAINT - 1

2. Upon information and belief, Defendant The Management Company, LLC is a property management company with its principal place of business in Osburn, Shoshone County, Idaho.

3. Upon information and belief, Defendant Dawn E. Edmunds was at all relevant times a resident of the state of Idaho, Shoshone County.

4. This Court has jurisdiction of this claim under, and by virtue of 28 U.S.C. § 1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

5. This Court also has jurisdiction of this claim and is authorized to grant declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201, implemented through Rule 57 of the Federal Rules of Civil Procedure.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c), since the Defendants reside in and a substantial part of the events giving rise to the claims alleged herein occurred in this judicial district.

## II.
## STATEMENT OF FACTS

7. The facts and allegations herein stem from allegations in a lawsuit filed by Intermountain Fair Housing Council, Inc. ("IFHC") against The Management Company and Dawn E. Edmunds in the federal district court for the District of Idaho on November 6, 2015, Case No. 2:15-cv-00528-BLW ("underlying action").

8. A true and correct copy of the complaint filed in the underlying action is attached hereto as **Exhibit A** and incorporated herein is if set forth in full (the "Complaint").

COMPLAINT - 2

9. According to the Complaint, The Management Company is a property management company responsible for leasing several parcels of real property in Northern Idaho.

10. The Complaint alleges that Defendant Dawn Edmunds is the owner of the Management Company.

## THE UNDERLYING ACTION: ALLEGATIONS PERTAINING TO J.S.

11. ACUITY realleges and herein incorporates by reference the allegations set forth in paragraphs 1-10 above.

12. The Complaint alleges that a disabled individual, J.S., who required the assistance of a service animal for her disability, entered into an agreement in 2005 with Defendants for the rental of an apartment at the Idaho Building in Wallace, Idaho.

13. The Complaint further alleges that throughout J.S.'s tenancy, conditions at the Idaho Building failed to comply with health and safety standards, which had a detrimental effect on her disabled condition. IFHC alleges that J.S. repeatedly requested that repairs be made to the property to bring it into compliance with health and safety standards.

14. According to the Complaint, The Management Company and Ms. Edmunds retaliated against J.S. after she submitted repair requests to Defendants by sending her a letter, dated June 21, 2010, which increased her rent from $300.00 per month to $600.00 per month.

15. IFHC claims that on January 13, 2012, J.S. requested that The Management Company and Ms. Edmunds make further repairs to her apartment to bring it into compliance with health and safety requirements. The Complaint also states that J.S. requested a reasonable accommodation in the form of advance notice when such repairs would be made because her disabled condition purportedly made it difficult for her to answer the door quickly.

COMPLAINT - 3

16. The Complaint states that Defendant Edmunds refused to grant J.S.'s requested accommodation.

17. The Complaint alleges that Defendants The Management Company and Edmunds retaliated against J.S. by sending her written notice on February 21, 2012 that she would not be permitted further service animals and stating that she was required to keep her service animal on a leash. The Complaint states that J.S. has great difficulty keeping her service animal on a leash as a result of her disability. The Complaint states that Defendants informed J.S. that they would install cameras in the building to ensure she was keeping her service animal on a leash.

18. According to the Complaint, IFHC and J.S. each submitted complaints to HUD regarding the above-described conduct in March 2012. The Complaint alleges that the Defendants' conduct constituted a violation of the Fair Housing Act.

**THE UNDERLYING ACTION: ALLEGATIONS PERTAINING TO S.B.**

19. ACUITY realleges and herein incorporates by reference the allegations set forth in paragraphs 1-18 above.

20. The Complaint alleges that that a disabled individual, S.B., contacted Defendants regarding a rental property at 14 East Mission in Kellogg, Idaho, that she had seen advertised for rent.

21. IFHC alleges that Defendants denied the rental to S.B. after she told them that she has a service animal for her disability.

22. According to the Complaint, as a result of Defendants' refusal to rent to S.B., she was unable to obtain housing and forced to relocate out-of-state.

COMPLAINT - 4

## THE UNDERLYING ACTION:  ALLEGATIONS PERTAINING TO IFHC'S INVESTIGATION

23. ACUITY realleges and herein incorporates by reference the allegations set forth in paragraphs 1-22 above.

24. IFHC claims that as a result of the complaints it received from J.S. and S.B. regarding Defendants' housing practices, IFHC conducted four telephonic tests of the Defendants.

25. The Complaint states the first telephonic test of Defendants occurred on or about January 28, 2014, during which IHFC's tester inquired as to the availability of housing and disclosed that the tester's husband has a service animal for his disability. The Complaint alleges the Defendants told the tester that the service animal would not be permitted at the residence.

26. IFHC further alleges a second telephonic test was conducted on or about March 7, 2014, during which another tester inquired as to the availability of housing. The Complaint alleges the tester disclosed that her son has a service animal and was told that the particular type of service animal, a beagle, would be allowed, but that a pit pull would not.

27. The Complaint alleges that on or about April 4, 2014, a third telephonic test was conducted, during which the tester inquired about the availability of a property. When the tester shared that her son has a companion animal prescribed by his doctor, Defendant Edmunds purportedly told the tester "that is a pet," which would not be allowed at the residence.

28. According to the Complaint, a fourth telephonic test was conducted on or about June 4, 2014. The Complaint states that during the test, the tester asked about the availability of housing at 122 Cypress in Wallace, Idaho, and disclosed that the tester's sister, who would reside

COMPLAINT - 5

with her, had a service animal prescribed by a physician for her disability. The Complaint alleges the fourth tester was told her sister's service animal would not be permitted at 122 Cypress, but that two other available rental units could accommodate the animal, provided it weighs less than ten pounds.

29. IFHC claims that as a result of the Defendants' discriminatory and negligent conduct, J.S. and S.B. have suffered out-of-pocket expenses, embarrassment, humiliation, deprivation of their civil rights, pain and suffering, inconvenience, and emotional and physical suffering.

## III.
## DECLARATORY RELIEF

30. ACUITY realleges and herein incorporates by reference the allegations set forth in paragraphs 1-29 above.

31. ACUITY issued The Management Company a Commercial General Liability Policy, No. X57990, effective December 4, 2012 through December 4, 2013, and renewed for the policy period of December 4, 2013 through December 4, 2014 (the "Policy"). A true and correct copy of the Policy is attached hereto as **Exhibit B** and incorporated herein as if set forth in full.

32. The Management Company and Ms. Edmunds have demanded that ACUITY defend their actions and pay any judgment which may be rendered against them in the underlying action within policy limits.

33. ACUITY is defending The Management Company and Ms. Edmunds in the underlying action subject to a reservation of rights pending resolution of the coverage issue.

## COVERAGE A

34. ACUITY realleges and herein incorporates by reference the allegations set forth in paragraphs 1-33 above.

35. Pursuant to Coverage A - Bodily Injury and Property Damage Liability, the Policy provides liability coverage for "sums that the insured becomes legally obligated to pay as damages because of *bodily injury* or *property damage*…."

36. "Bodily injury" is defined by the Policy as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

37. The Policy contains an exclusion for "[b]*odily injury* arising out of *personal and advertising injury*."

38. Based on the allegations in the Complaint filed in the underlying action, ACUITY is not obligated by the terms of the Policy to defend the action or indemnify Defendants because the Complaint has not alleged "bodily injury," as that term is defined by the Policy.

39. Based on the allegations in the Complaint filed in the underlying action, ACUITY is not obligated by the terms of the Policy to defend the action or indemnify Defendants because the facts alleged by IFHC in the underlying action fall within the Policy exclusion for "*bodily injury* arising out of *personal and advertising injury*."

## COVERAGE B

40. ACUITY realleges and herein incorporates by reference the allegations set forth in paragraphs 1-39 above.

41. Pursuant to Coverage B - Personal and Advertising Injury Liability, the Policy provides liability coverage for "sums that the insured becomes legally obligated to pay as damages because of *personal and advertising injury*…."

42. The Policy defines "*personal and advertising injury*" as "injury, including consequential *bodily injury*, arising out of…[t]he wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor…."

43. The coverage for "personal and advertising injury" provided by the Policy applies only to an offense "committed in the *coverage territory* during the policy period."

44. The Policy excludes coverage for "*personal and advertising injury* caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict *personal and advertising injury*."

45. Based on the allegations in the Complaint filed in the underlying action, ACUITY is not obligated by the terms of the Policy to defend the action or indemnify Defendants because the facts alleged by IFHC do not constitute "personal and advertising injury," as that term is defined by the Policy.

46. ACUITY is not obligated by the terms of the Policy to defend the underlying action or indemnify the claims related to J.S. because the Complaint does not allege a "personal and advertising injury" caused by an offense committed during the policy period.

47. Based on the allegations in the Complaint filed in the underlying action, ACUITY is not obligated by the terms of the Policy to defend the action or indemnify Defendants because

COMPLAINT - 8

the facts alleged by IFHC in the underlying action fall within the Policy exclusion for "personal and advertising injury" intentionally caused by the insured.

48. As a consequence of the underlying action, ACUITY has been required to establish and maintain reserves for the claims set forth in the Complaint and incur defense costs and other expenses.

49. Pursuant to 28 U.S.C. § 2201, ACUITY is entitled to a determination by the Court that there is no coverage under the Policy for the claims presented in the underlying action and a declaration that ACUITY is not required or obligated to defend or indemnify Defendants in the underlying action.

## IV.
## PRAYER

WHEREFORE, ACUITY requests the following relief:

1. A declaration by reason of the terms and conditions of the Policy and of the facts herein alleged that coverage is not afforded by the subject Policy;

2. A declaration that ACUITY does not have a duty to defend Defendants The Management Company and Dawn Edmunds in the aforementioned underlying action;

3. A declaration that ACUITY has no duty to indemnify Defendants The Management Company and Dawn Edmunds, including the payment of any judgment or settlement in the underlying action;

4. An award of costs as is equitable and just; and

5. Such other and further relief as this Court deems proper.

DATED THIS 31st day of March, 2016.

                                                HAWLEY TROXELL ENNIS & HAWLEY LLP


                                      By   /s/ *Carsten A. Peterson*
                                            Carsten A. Peterson, ISB No. 6373
                                            Attorneys for Plaintiff

COMPLAINT - 10